**ORAL ARGUMENT NOT YET SCHEDULED**

## No. 20-5329

# United States Court of Appeals for the D.C. Circuit

IN RE: FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES,

JAMES H. ROANE, JR., ET AL.,

*Plaintiffs-Appellants,*

– v. –

WILLIAM P. BARR, ATTORNEY GENERAL, ET AL.,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

### BRIEF FOR PLAINTIFFS-APPELLANTS

JONATHAN L. MARCUS
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7000
jonathan.marcus@skadden.com

ALEXANDER C. DRYLEWSKI
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
(212) 735-3000
alexander.drylewski@skadden.com

*Attorneys for Plaintiff-Appellant Corey Johnson*

*Additional Counsel Listed On Inside Cover*

SHAWN NOLAN
FEDERAL COMMUNITY
    DEFENDER OFFICE, E.D. PA.
601 Walnut Street, Suite 545 W.
Philadelphia, PA 19106
(215) 928-0520
shawn_nolan@fd.org

*Counsel for Plaintiff-Appellant
Jeffrey Paul*

PAUL F. ENZINNA
ELLERMAN ENZINNA PLLC
1050 30th Street, NW
Washington, DC 20007
(202) 753-5553
penzinna@ellermanenzinna.com

*Counsel for Plaintiff-Appellant James
H. Roane, Jr.*

JONATHAN C. AMINOFF
AMY KARLIN
CELESTE BACCHI
DEPUTY FEDERAL
    PUBLIC DEFENDERS
321 E. Second Street
Los Angeles, California 90012
(213) 894-2854
jonathan_aminoff@fd.org

*Counsel for Plaintiff-Appellant
Julius O. Robinson*

GINGER D. ANDERS
JONATHAN S. MELTZER
BRENDAN GANTS
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100
ginger.anders@mto.com

*Counsel for Plaintiff-Appellant
Brandon Bernard*

ALEX KURSMAN
SHAWN NOLAN
FEDERAL COMMUNITY
    DEFENDER OFFICE, E.D. PA.
601 Walnut Street, Suite 545 W.
Philadelphia, PA 19106
(215) 928-0520
alex_kursman@fd.org

*Counsel for Plaintiff-Appellant
Alfred Bourgeois*

JOSEPH LUBY
FEDERAL COMMUNITY
    DEFENDER OFFICE, E.D. PA.
601 Walnut Street, Suite 545 W.
Philadelphia, PA 19106
(215) 928-0520
joseph_luby@fd.org

*Counsel for Plaintiff-Appellant
Chadrick Fulks*

i

AMY LENTZ
STEPTOE & JOHNSON, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
(202) 429-1350
alentz@steptoe.com

*Counsel for Plaintiff-Appellant Orlando Hall*

EVAN MILLER
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 W.
Washington, DC 20037
(202) 639-6605
emiller@velaw.com

*Counsel for Plaintiff-Appellant Bruce Webster*

MATTHEW LAWRY
SHAWN NOLAN
FEDERAL COMMUNITY
    DEFENDER OFFICE, E.D. PA.
601 Walnut Street, Suite 545 W.
Philadelphia, PA 19106
(215) 928-0520
matthew_lawry@fd.org

*Counsel for Plaintiff-Appellant Dustin Higgs*

FREDERICK R. GERSON
DURRETTE, ARKEMA,
    GERSON & GILL PC
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Plaintiff-Appellant Richard Tipton, III*

GERALD W. KING, JR.
JEFFREY LYN ERTEL
FEDERAL DEFENDER
    PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530
gerald_king@fd.org

*Counsel for Plaintiff-Appellant Richard Tipton, III*

STEPHEN NORTHUP
TROUTMAN SANDERS LLP
P.O. BOX 1122
Richmond, Virginia 23218
(804) 697-1240
steve.northup@troutmansanders.com

*Counsel for Plaintiff-Appellant Richard Tipton, III*

JOSHUA C. TOLL
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

*Counsel for Plaintiff-Appellant
Anthony Battle*

SCOTT W. BRADEN
ARKANSAS FEDERAL
    DEFENDER OFFICE
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
scott_braden@fd.org

*Counsel for Plaintiff-Appellant
Norris G. Holder, Jr.*

MARGARET O'DONNELL
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff-Appellant
Anthony Battle*

ANDREW MOSHOS
JENNIFER YING
MORRIS, NICOLS, ARSHT &
    TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
amoshos@mnat.com

*Counsel for Plaintiff-Appellant
Norris G. Holder, Jr.*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certify as follows:

### I.    <u>Parties and Amici</u>

Appellants are Plaintiffs Jeffrey Paul, Norris G. Holder, Jr., James H. Roane, Jr., Corey Johnson, Julius O. Robinson, Anthony Battle, Brandon Bernard, Alfred Bourgeois, Chadrick E. Fulks, Orlando Hall, Bruce Webster, Dustin Higgs, and Richard Tipton, III.

Appellees are the United States Department of Justice, William P. Barr, Timothy Shea, Michael Carvajal, Nicole C. English, Jeffrey E. Krueger, T.J. Watson, William Wilson, M.D., Donald W. Washington, and Stephen M. Hahn, M.D.

Plaintiffs appearing before the district court were Brandon Bernard, Alfred Bourgeois, Chadrick E. Fulks, Norris G. Holder, Jr., Corey Johnson, James H. Roane, Jr., Julius Robinson, and Richard Tipton, III.   Intervenor-plaintiffs appearing before the district court were Anthony Battle, Orlando Hall, Dustin Higgs, Jeffrey Paul and Bruce Webster.

Defendants appearing before the district court were the United States Department of Justice, William P. Barr, Timothy Shea, Michael Carvajal, Nicole C.

English, Jeffrey E. Krueger, T.J. Watson, William Wilson, M.D., Donald W. Washington, and Stephen M. Hahn, M.D.

There are no *amici curiae* in this Court or in the district court.

## II.     Rulings Under Review

Appellants seek review of the district court's orders of August 15, 2020 (ECF No. 193), August 20, 2020 (ECF No. 205), September 20, 2020 (ECF Nos. 261, 262), and November 3, 2020 (ECF No. 305).

## III.    Related Cases

Appellants appeal from the district court's orders in the consolidated case, *In The Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, 1:19-mc-145 (D.D.C.).  The consolidated cases are:  *Roane v. Gonzales*, No. 1:05-cv-2337 (D.D.C.); *Robinson v. Mukasey*, No. 1:07-cv-2145 (D.D.C); *Bourgeois v. United States Department of Justice*, No. 1:12-cv-782 (D.D.C); and *Fulks v. United States Department of Justice*, No. 1:13-cv-938 (D.D.C.).  This consolidated case has been before this Court before.  *See In The Matter of the Federal Bureau of Prisons' Execution Protocol Case*, No. 19-5322 (D.C. Cir. 2020); No. 20-5199 (D.C. Cir. 2020); No. 20-5206 (D.C. Cir. 2020); No. 20-5252 (D.C. Cir. 2020); No. 20-5260 (D.C. Cir. 2020); No. 20-5285 (D.C. Cir. 2020).

Plaintiffs Hall and Bernard filed an emergency motion for stays of their executions with this Court on November 10, 2020, which is currently pending.  *See*

ECF No. 1870637.  To my knowledge, there are currently no other pending related

cases in this Court or other courts that raise the same issues presented on appeal here.

Dated:  November 11, 2020

Respectfully submitted,

/s/ *Alexander C. Drylewski*
Alexander C. Drylewski
Jonathan L. Marcus

*Counsel for Plaintiff-Appellant*
*Corey Johnson*

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............iv

TABLE OF CONTENTS............................................................ vii

TABLE OF AUTHORITIES .....................................................ix

GLOSSARY..........................................................................xv

JURISDICTIONAL STATEMENT ...........................................1

ISSUES PRESENTED............................................................1

STATEMENT OF THE CASE...................................................2

I.    Plaintiffs' Claims .......................................................3

II.   Procedural History ....................................................6

    A.   The District Court Enjoins Executions Because Plaintiffs Have "The Better of the Scientific Evidence" Regarding the Suffering Caused by Pentobarbital........................................6

    B.   The Supreme Court Renders its Decision in *Barr v. Lee* ....................7

    C.   Defendants Seek Dismissal and Summary Judgment on Plaintiffs' Claims........................................9

    D.   The District Court Grants Summary Judgment to Plaintiffs on Their FDCA and APA Claim but Denies Them Relief ....................10

    E.   The District Court Grants Summary Judgment to Defendants on the FDPA Claim ...............................15

    F.   The District Court Denies Plaintiffs' Rule 59(e) Motions.................15

SUMMARY OF ARGUMENT ................................................16

STANDARD OF REVIEW ....................................................21

ARGUMENT .......................................................................22

I.   THE DISTRICT COURT ERRED IN DENYING PLAINTIFFS'
     REQUEST TO PREVENT DEFENDANTS FROM CONTINUING
     TO VIOLATE THE FDCA .............................................................22

     A.   The District Court Applied the Wrong Standards for Final
          Injunctive Relief ................................................................23

     B.   Plaintiffs' Irreparable Harm Is Sufficient Under any Standard ..........24

     C.   Even if the District Court Applied the Correct Irreparable Harm
          Standard, it Erred by Abdicating its Factfinding
          Responsibilities and Requiring Plaintiffs to Discredit
          Defendants' Evidence Entirely ...............................................32

     D.   The District Court Erred by Failing to Apply the Plain
          Language of the APA ...........................................................37

II.  THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS'
     EIGHTH AMENDMENT CLAIM ...............................................39

     A.   Plaintiffs Have Pleaded a Viable Eighth Amendment Claim .............39

     B.   The District Court's Holding that *Lee* Creates a Categorical Bar
          to Plaintiffs' Claim Is Based on a Fundamental Misreading of
          *Lee* ................................................................................42

     C.   The District Court Applied the Incorrect Standard to
          Defendants' Motion to Dismiss ..............................................44

III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY
     JUDGMENT TO DEFENDANTS ON PLAINTIFFS' FDPA CLAIM .......48

CONCLUSION ........................................................................52

CERTIFICATE OF COMPLIANCE ...............................................i

CERTIFICATE OF SERVICE .................................................... ii

STATUTORY ADDENDUM ....................................................... iii

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Al-Joudi v. Bush*,
    406 F. Supp. 2d 13 (D.D.C. 2005)..........................................................28, 31

*Antoine v. U.S. Bank National Ass'n*,
    547 F. Supp. 2d 30 (D.D.C. 2008)................................................................46

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................40, 48

*Banks v. Booth*,
    No. 20-849, 2020 WL 3303006 (D.D.C. June 18, 2020) .............................28

*Barr v. Lee*,
    140 S. Ct. 2590 (2020)...................................... 2, 8, 20, 32, 34, 36, 43, 44, 46

*Barr v. Purkey*,
    No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020)...............................9, 10

*Baze v. Rees*,
    553 U.S. 35 (2008)........................................................................................40

*Beaty v. FDA*,
    853 F. Supp. 2d 30 (D.D.C. 2012)..........................................................25, 27

*Beck v. U.S. Government*,
    318 F. Supp. 3d 55 (D.D.C. 2018)................................................................45

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................40

*Bell Helicopter Textron Inc. v. Airbus Helicopters*,
    78 F. Supp. 3d 253 (D.D.C. 2015)................................................................24

*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013) ..................................................................50, 51

*Biodiversity Legal Foundation v. Badgley*,
 309 F.3d 1166 (9th Cir. 2002) .......................................................27

*Brown v. Government of D.C.*,
 390 F. Supp. 3d 114 (D.D.C. 2019)............................................46

*Bucklew v. Precythe*,
 139 S. Ct. 1112 (2019)....................................................18, 34, 46

*Career College Ass'n v. U.S. Department of Education*,
 No. 92-1345, 1992 WL 233837 (D.D.C. Aug. 31, 1992).............................47

*Center for Biological Diversity v. Ross*,
 No. 18-112, 2020 WL 4816458 (D.D.C. Aug. 19, 2020)............................24

*Checkosky v. S.E.C.*,
 23 F.3d 452 (D.C. Cir. 1994).......................................................39

*Chrysler Corp. v. Brown*,
 441 U.S. 281 (1979).................................................................13

*Cobell v. Norton*,
 391 F.3d 251 (D.C. Cir. 2004)......................................................47

*Cook v. FDA*,
 733 F.3d 1 (D.C. Cir. 2013)..........................................................8

*Crawford v. Duke*,
 867 F.3d 103 (D.C. Cir. 2017)......................................................45

*Doe v. Mattis*,
 928 F.3d 1 (D.C. Cir. 2019)........................................................24

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006)................................................................39

*Edmo v. Corizon, Inc.*,
 935 F.3d 757 (9th Cir. 2019) ......................................................28

*FDA v. Brown & Williamson Tobacco Corp.*,
 529 U.S. 120 (2000)...........................................................6, 7, 26

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000)......................................................................49

*Garnett v. Zeilinger*,
    No. 17-cv-1757, 2020 WL 5411295 (D.D.C. Sept. 9, 2020) ......................47

*Gayle v. Meade*,
    No. 20-21553-Civ, 2020 WL 3041326 (S.D. Fla. June 6, 2020) .................28

*Glossip v. Gross*,
    576 U.S. 863 (2015)................................................................5, 40

*Harris v. Board of Supervisors, Los Angeles County*,
    366 F.3d 754 (9th Cir. 2004) ........................................................29

*Innovation Law Lab v. Wolf*,
    951 F.3d 1073 (9th Cir. 2020) ......................................................38

*Johnson v. Greater Southeast Community Hospital Corp.*,
    No. Civ.A. 90-1992, 1996 WL 377147 (D.D.C. June 24, 1996) .................33

*Lannan Foundation v. Gingold*,
    300 F. Supp. 3d 1 (D.D.C. 2017)....................................................46

*Mays v. Dart*,
    453 F. Supp. 3d 1074 (N.D. Ill. 2020).............................................36

*Mays v. Dart*,
    456 F. Supp. 3d 966 (N.D. Ill. 2020)..............................................29

*McGehee v. Hutchinson*,
    No. 4:17-cv-00179, 2017 WL 1381663 (E.D. Ark. Apr. 15, 2017).............42

*Monsanto Co. v. Geerston Seed Farms*,
    561 U.S. 139 (2010)................................................................24

*National Ass'n of Farmworkers Organizations v. Marshall*,
    628 F.2d 604 (D.C. Cir. 1980)......................................................24

*National Black Police Ass'n v. District of Columbia*,
    108 F.3d 346 (D.C. Cir. 1997)......................................................49

*National Mining Ass'n v. U.S. Army Corps of Engineers*,
    145 F.3d 1399 (D.C. Cir. 1998) ..................................................................38

*Navajo Nation v. Azar*,
    302 F. Supp. 3d 429 (D.D.C. 2018) .........................................................47

*Odom v. District of Columbia*,
    248 F. Supp. 3d 260 (D.D.C. 2017) .........................................................45

*Price v. Dunn*,
    No. 14-0472, 2015 WL 6962854 (S.D. Ala. Oct. 20, 2015) ......................42

*Southern Poverty Law Center v. U.S. Department Homeland Security*
    No. 18-760, 2020 WL 3265533 (D.D.C. June 17, 2020) ...........................47

*Taylor v. Reilly*,
    685 F.3d 1110 (D.C. Cir. 2012) ..............................................................22

*Trump v. International Refugee Assistance Project*,
    137 S. Ct. 2080 (2017) ...........................................................................47

*United States v. Anthem, Inc.*,
    855 F.3d 345 (D.C. Cir. 2017) ................................................................22

*United States v. Forness*,
    125 F.2d 928 (2d Cir. 1942) ...................................................................33

*United States v. Ghana Social Marketing Foundation*,
    No. 11-418, 2012 WL 13076832 (D.D.C. Aug. 8, 2012) ...........................45

*United States v. Nazir*,
    211 F. Supp. 2d 1372 (S.D. Fla. 2002) ....................................................14

*United States v. Regenerative Sciences LLC*,
    741 F.3d 1314 (D.C. Cir. 2014) ..............................................................22

*United States v. Smith*,
    573 F.3d 639 (8th Cir. 2009) ..................................................................26

*United Steel v. Mine Safety & Health Administration*,
    925 F.3d 1279 (D.C. Cir. 2019) ...........................................................38, 39

*University of Texas v. Camenisch*,
     451 U.S. 390 (1981)), *appeal filed* ...............................................47

*Waggel v. George Washington University*,
     957 F.3d 1364 (D.C. Cir. 2020)....................................................22

*Williams v. Zbaraz*,
     442 U.S. 1309 (1979).................................................................29

*Wilson v. Dunn*,
     No. 2:16-CV-364, 2017 WL 5619427 (M.D. Ala. Nov. 21, 2017)..............42

*Wilson v. Williams*,
     455 F. Supp. 3d 467 (N.D. Ohio 2020) .......................................28

*Wisconsin Gas Co. v. FERC*,
     758 F.2d 669 (D.C. Cir. 1985)................................................23, 24

*Withrow v. Larkin*,
     421 U.S. 35 (1975)....................................................................39

*Zino Davidoff SA v. CVS Corp.*,
     571 F.3d 238 (2d Cir. 2009) ......................................................29

## STATUTES

5 U.S.C. § 706.............................................................................2, 19

21 U.S.C. § 353...............................................................................14

Ga. Code Ann. § 17-10-41................................................................50

Tex. Code Crim. Proc. Ann. art. 43.14(a).............................................52

Tex. Code Crim. Proc. Ann. art. 43.141(c)............................................52

## RULES

Fed. R. Civ. P. 12(b)(6)................................................................20, 44

Fed. R. Civ. P. 52(a)....................................................................33, 35

Fed. R. Civ. P. 56...........................................................................52

Fed. R. Civ. P. 59(e)..............................................................................1, 35

## OTHER AUTHORITIES

Wright & Miller, *Federal Practice and Procedure* § 2944, at 94 (2d ed. 1995) ...........................................................................................38

## <u>GLOSSARY</u>

| | |
|---|---|
| **2019 Protocol** | Addendum to the Bureau of Prisons' Execution Protocol Federal Sentence Implementation Procedures Effective July 25, 2019 |
| **APA** | Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* |
| **BOP** | Federal Bureau of Prisons |
| **COVID-19** | Coronavirus Disease 2019 |
| **DOJ** | United States Department of Justice |
| **FDCA** | Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* |
| **FDPA** | Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.* |

## JURISDICTIONAL STATEMENT

The district court's jurisdiction in this case rests on 28 U.S.C. § 1331. On August 15, 2020, the district court granted Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim. J.A.79. On September 20, 2020, the district court granted summary judgment to Defendants as to Plaintiffs' Federal Death Penalty Act ("FDPA") claim and granted summary judgment on Plaintiffs' Administrative Procedure Act ("APA") claim based on Defendants' ongoing violations of the Food, Drug, and Cosmetic Act ("FDCA"), but denied Plaintiffs' request for injunctive relief. J.A.85. On November 3, 2020, the district court denied Plaintiffs' Fed. R. Civ. P. Rule 59(e) motions seeking reconsideration of these orders. J.A.127.

Plaintiffs filed a timely notice of appeal on November 4, 2020. J.A.856. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether the district court erred in holding that Plaintiffs failed to demonstrate irreparable harm, entitling them to injunctive relief, despite concluding that Defendants are acting contrary to law in violation of the FDCA and APA by executing prisoners pursuant to the Department of Justice's current lethal injection protocol (the "2019 Protocol") without first obtaining a valid prescription for pentobarbital sodium ("pentobarbital"), as the FDCA requires.

2.     Whether the district court erred in requiring Plaintiffs to show irreparable harm, after it found that Defendants are acting contrary to law in violation of the APA, which requires that such unlawful agency action "shall" be "set aside."

3.     Whether the district court erred in dismissing, at the pleading stage, Plaintiffs' claim that the 2019 Protocol violates the Eighth Amendment's prohibition against cruel and unusual punishment based on the decision in *Barr v. Lee*, 140 S. Ct. 2590 (2020) (per curiam), which was rendered in the context of a preliminary injunction.

4.     Whether the district court erred in granting summary judgment to Defendants as to Plaintiffs' claim of *ultra vires* agency action in violation of the FDPA based on Defendants' representation that they intended to comply with certain state laws and that Plaintiffs had not demonstrated an irreparable injury from a violation of those state laws.

## STATEMENT OF THE CASE

This appeal challenges Defendants' continuing use of the 2019 Protocol to execute prisoners in violation of federal law and the U.S. Constitution.

On July 25, 2019, the United States Department of Justice ("DOJ") announced the 2019 Protocol, the Government's exclusive protocol for carrying out executions.  J.A.327; DOJ Press Release, Federal Government to Resume Capital Punishment    After    Nearly    Two    Decade    Lapse    (July    25,    2019),

https://bit.ly/33RYFQK ("DOJ Press Release").  The 2019 Protocol provides that federal executions are to be carried out using a lethal dose of pentobarbital.  J.A.328.[1] Following the announcement, the district court consolidated four pending cases challenging the 2019 Protocol.  J.A.136.  This appeal arises from the consolidated action.

## I.    <u>Plaintiffs' Claims</u>

On June 1, 2020, Plaintiffs filed an Amended Complaint alleging, *inter alia*, that:  (1) Defendants are violating the FDCA, and thus acting contrary to law under the APA, by carrying out the 2019 Protocol without obtaining a valid prescription for pentobarbital before using it to execute Plaintiffs, J.A.375; (2) the 2019 Protocol will subject Plaintiffs to cruel and unusual punishment in violation of their rights under the Eighth Amendment, J.A.364; and (3) the 2019 Protocol violates the FDPA by failing to comply with state execution protocols and procedures, including those codified in state law, J.A.368.[2]

As Plaintiffs allege in the Amended Complaint, Defendants' use of pentobarbital will cause prisoners to suffer flash pulmonary edema, a condition that

---

[1] Despite the pendency of the current action and related proceedings challenging the 2019 Protocol, the Government has carried out seven executions pursuant to that protocol.

[2] Plaintiffs' Amended Complaint also asserts several other claims, which are not the subject of this appeal.  *See* J.A.330.

causes "sensations of drowning and asphyxiation" before becoming unconscious and insensate and results in "extreme pain, terror and panic." J.A.346. Plaintiffs have provided extensive evidence from medical experts, including anaesthesiologist Gail Van Norman and pathologist Mark Edgar. Having reviewed over two dozen autopsy reports, Drs. Van Norman and Edgar concluded that it was "extremely likely" that prisoners injected with pentobarbital "will experience sensations of drowning and suffocation when they die." J.A.347. As Dr. Van Norman explained: "[I]t is a 'virtual medical certainty' that most, if not all, prisoners executed with a single dose of pentobarbital, as is contemplated by the 2019 Protocol, experienced 'immediate, flash pulmonary edema.'" *Id.* (emphasis added); *see also* J.A.192; J.A.273-74; J.A.278, 284; J.A.229. Moreover, numerous witness reports confirm that prisoners executed by lethal injection of pentobarbital have "experienced acute symptoms of pulmonary edema, including burning sensations, labored breathing, gasping, and other signs of severe pain and respiratory distress." J.A.348.

Defendants have not contested that the majority of prisoners executed with pentobarbital suffer flash pulmonary edema. Instead, Defendants have argued that prisoners experience flash pulmonary edema only after they lose consciousness. *See* J.A.404. As Dr. Van Norman has explained, however, Defendants' expert analysis conflates the distinct phenomena of unresponsiveness, on the one hand, and unconsciousness, on the other. J.A.438. As a result, Defendants' expert, Dr.

4

Antognini, incorrectly assumes that "unresponsiveness" is proof of "unconsciousness," despite modern scholarship demonstrating that this assumption is "simply untrue." *Id.* Dr. Van Norman has further explained that flash pulmonary edema develops "almost instantaneously," and studies of patients anesthetized with barbiturates (like pentobarbital) indicate that they remain conscious for a significant period of time following injection. J.A.443-444.

Based on this medical evidence, the 2019 Protocol is "sure or very likely to cause serious illness and needless suffering" because it "creates a demonstrated risk of severe pain," and therefore violates the Eighth Amendment. *See Glossip v. Gross*, 576 U.S. 863, 877-78 (2015).

Further, through the 2019 Protocol, Defendants have continued to violate the FDCA, which conditions the dispensing of controlled substances, such as pentobarbital, upon obtaining a valid prescription from a licensed medical professional. J.A.374 (citing 21 U.S.C. § 353(b)(1)). The "core" purpose of the FDCA is to ensure that a drug is "'safe' and 'effective' for its intended use." J.A.374 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). By ignoring the requirement to obtain a prescription, Defendants deprive Plaintiffs of the very protections that the FDCA requires—namely, that pentobarbital be used only after consultation with medical professionals to ensure its humane administration based on current medical knowledge and information in order to

minimize the risks of pain and suffering.  J.A.373-375.  This continuing, blatant

violation of the FDCA renders the 2019 Protocol contrary to law under the APA.

In addition, the 2019 Protocol violates Section 3596 of Title 18 because

it does not require executions to be "implement[ed] . . . in the manner prescribed by

the law of the State in which the sentence is imposed," as is required.  J.A.368

(quoting 18 U.S.C. § 3596(a)).

## II.  Procedural History

### A.  The District Court Enjoins Executions Because Plaintiffs Have "The Better of the Scientific Evidence" Regarding the Suffering Caused by Pentobarbital

On June 15, 2020, the Government set execution dates for four

plaintiffs who were, at that time, parties to this action:  Daniel Lee (July 13, 2020);

Wesley Purkey (July 15, 2020); Dustin Honken (July 17, 2020); and Keith Nelson

(August 28, 2020) (collectively, the "four plaintiffs").  J.A.393.  On July 13, 2020,

the day Mr. Lee was scheduled to be executed, the district court entered a

preliminary injunction barring these executions.  J.A.468.  The district court held

that the four plaintiffs were likely to succeed on their Eighth Amendment claim that

the 2019 Protocol constituted cruel and unusual punishment.  *Id.*

In doing so, the court concluded that Plaintiffs had "the better of the

scientific evidence" regarding whether pentobarbital would cause prisoners to suffer

the symptoms of flash pulmonary edema before becoming insensate.  J.A.458.  The

court emphasized Dr. Van Norman's findings that pentobarbital could render patients "unresponsive" but still conscious and capable of experiencing the severe pain associated with flash pulmonary edema. *Id.* The court further emphasized Dr. Antognini's failure to undermine Dr. Van Norman's findings. *Id.*

Specifically, the district court found that the use of pentobarbital "poses a substantial risk of serious pain," J.A.459, and credited Plaintiffs' experts' conclusions that "there is a 'virtual medical certainty' that the 2019 Protocol will result in 'excruciating suffering'" by causing prisoners to experience "sensations of drowning and suffocation" before they die. J.A.456-457. As a result, the district court concluded that Plaintiffs were likely to succeed on their Eighth Amendment claim and entered a preliminary injunction preventing the executions of the four plaintiffs. J.A.468; *see also* ECF No. 136.

### B.   The Supreme Court Renders its Decision in *Barr v. Lee*

On July 13, 2020, this Court denied the Government's motion to stay or vacate the preliminary injunction, holding that "[r]esolution of the merits of the inmates' claim . . . involves novel and difficult constitutional questions that require the benefit of further factual and legal development." J.A.902-903. The Government sought immediate review in the Supreme Court.

On July 14, 2020, in the early morning hours, the Supreme Court issued a 5-4 *per curiam* decision, vacating the injunction on the ground that the four

plaintiffs had not established that they were likely to succeed on the Eighth Amendment claim. *Barr v. Lee*, 140 S. Ct. 2590, 2591-92 (2020). The majority also stated that "last-minute stays like that issued [hours earlier] should be the extreme exception, not the norm." *Id.* at 2591. According to the majority, the four plaintiffs' showing did not satisfy the high bar "required to justify last-minute intervention by a Federal Court." *Id.* Hours after the decision was rendered, Defendants executed Mr. Lee.

Following Mr. Lee's execution, the district court granted a preliminary injunction in favor of Plaintiffs Purkey, Honken, and Nelson on the grounds that Defendants' Protocol violates the FDCA. J.A.496-497, J.A.502. Defendants asked this Court to stay or vacate the injunction, arguing that: the district court acted on the same day as Mr. Purkey's scheduled execution; the FDCA does not apply to lethal injection drugs; and the Government has exclusive authority to enforce the FDCA's mandates. The Court denied the motion, noting that the Government's position conflicted with *Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013), and that Plaintiffs are permitted to bring an APA claim asserting that Defendants' use of pentobarbital under the 2019 Protocol is contrary to law based on Defendants' violations of the FDCA. *See* J.A.906. Hours later, the Supreme Court vacated the district court's injunction without stating any reasons. *See Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020).

8

### C.    Defendants Seek Dismissal and Summary Judgment on Plaintiffs' Claims

On July 31, 2020, Defendants moved to dismiss Plaintiffs' Eighth Amendment claim and for summary judgment on Plaintiffs' FDCA, APA, and FDPA claims.  ECF No. 169.  Plaintiff Nelson, who was scheduled to be executed in under 30 days, filed an emergency motion for an expedited trial on the Eighth Amendment claim, ECF No. 174, and an emergency motion for summary judgment on the FDCA and APA claim, ECF No. 180.

The district court declined to schedule an expedited trial and granted Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim.  J.A.79.  As detailed below, the district court premised its decision upon an erroneous reading of *Lee* as effectively foreclosing *any* Eighth Amendment challenge to the use of pentobarbital in lethal injections, "no matter the evidence of excruciating pain." J.A.83 ("Under *Lee*, even if this court found in favor of Plaintiffs on all alleged facts, there would be no Eighth Amendment violation because the evidence of pain would not satisfy *Lee*'s high bar for an objectively intolerable risk of pain.").  In doing so, the district court expressly acknowledged that it may have "read *Lee* too broadly." *Id.*[3]

---

[3] Plaintiff Nelson thereafter filed an emergency motion for entry of partial, final judgment on the Eighth Amendment claim pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on August 17, 2020.  ECF No. 196.  On August 20, 2020,

*(cont'd)*

**D.     The District Court Grants Summary Judgment to Plaintiffs on Their FDCA and APA Claim but Denies Them Relief**

On August 27, 2020, the district court granted summary judgment in favor of Plaintiff Nelson on the FDCA and APA claim, concluding that Defendants' carrying out of the 2019 Protocol was contrary to law because it failed to comply with the FDCA's premarketing, labeling, and prescription requirements. J.A.556-560. The district court accordingly entered a final order barring Defendants from executing him. J.A.556-560, J.A.563.

Later that day, this Court vacated the order and remanded for the district court to make explicit findings regarding whether Plaintiffs would suffer irreparable harm in the absence of an injunction. J.A.916. On remand, the district court held that Mr. Nelson failed to demonstrate irreparable harm from Defendants' ongoing violation of the FDCA and APA. J.A.91. Defendants executed Mr. Nelson a few hours later.

On September 9, 2020, Plaintiffs moved for summary judgment and sought injunctive relief on their claim. In their opposition, Defendants presented a declaration from pathologist Dr. Kendall Von Crowns, who, based on purported accounts of the executions of Plaintiffs Purkey, Lee, and Honken, stated that there was "no evidence of distress that would be seen in acute (flash) pulmonary edema"

---

the district court entered partial final judgment for Defendants, dismissing the Eighth Amendment claim as to all remaining Plaintiffs except Holder. J.A.84.

10

because "the breathing of all three individuals was noted to be steady and unlabored." J.A.568. Dr. Crowns agreed with Dr. Antognini that the prisoners would have been unconscious when the pulmonary edema set in. J.A.568.

The court held an abbreviated evidentiary hearing on September 18 and 19, 2020. *See* J.A.121-122. Based on the expert declarations, the district court stated that "reasonable minds could differ" on the question of "whether an inmate will suffer flash pulmonary edema before becoming insensate." J.A.121.

At the hearing, the district court explained that Dr. Antognini's reports and testimony "did not carry much weight" because he primarily studies animals, no longer routinely practices, and relied on outdated studies to support his view that pentobarbital renders prisoners unconscious before the onset of pulmonary edema. J.A.123.

The district court noted Dr. Crowns' admission that he was unaware that media witnesses to the executions of Plaintiffs Purkey, Lee and Honken *did* describe the prisoners as "showing labored breathing, gasping for breath, or heaving." *See* J.A.122. This admission significantly undercut Dr. Crowns' assertions that "the breathing of all three individuals was noted to be steady and unlabored" and, therefore, that there was "no evidence of distress that would be seen in acute (flash) pulmonary edema." J.A.568. The district court determined nevertheless that this admission did not "completely undermine" Dr. Crowns'

conclusions, because Dr. Crowns testified that gasping or labored breathing alone *could* be indicative of "agonal breathing" that occurs in the moments preceding death but after the prisoner is rendered unconscious.  J.A.122-123.

On September 20, 2020, the district court granted summary judgment in favor of Plaintiffs on their FDCA and APA claim, correctly concluding that "the pentobarbital the government intends to use in executions is subject to the FDCA and fails to meet the premarketing, labeling, and prescription requirements therein," and that because "the government's use, under the 2019 Protocol, of pentobarbital . . . has not been prescribed and does not meet other statutory requirements of the FDCA," the intended executions "constitute[] agency action that is contrary to law in violation of the APA."  J.A.117; J.A.551.

The district court made several subsidiary rulings in support of its grant of summary judgment.  *See* J.A.496-497; J.A.556-560; J.A.116-125.  First, the district court adopted this Court's reasoning that the FDCA applies to lethal injection drugs.  J.A.908; *see also* J.A.557; J.A.496-497.  The district court rejected the Government's claimed exemption for drugs used in executions, which this Court emphasized "conflicts with the necessary premise of a published precedential decision of our [C]ourt."  J.A.557 (quoting J.A.908).  The district court further reasoned that the FDCA's statutory objectives equally apply to drugs used for executions.  *See* J.A.558 ("Where the government argues that a lethal injection drug

is legally and constitutionally permissible because it will ensure a 'humane' death, it cannot then disclaim a responsibility to comply with federal statutes enacted to ensure that the drugs operate humanely."); *see also* J.A.496.

Second, the district court concluded that Plaintiffs brought a viable APA claim. *See* J.A.558; J.A.117.  In doing so, the district court recognized that the APA provides a private right of action to redress the Government's ongoing FDCA violations. *See* J.A.555; J.A.494; *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 316-18 (1979).  The district court also rejected Defendants' invocation of the Supreme Court's July 16 summary order, which vacated the district court's preliminary injunction on the FDCA claim without reasoning. *See* J.A.558 ("[C]ontrary to the government's position, it would be improper for the court to interpret the Supreme Court's vacatur as an indication of how this [C]ourt should resolve the dispute on the merits.").

Third, the district court determined that Defendants are violating the FDCA's medical prescription requirement through the 2019 Protocol. J.A.558; J.A.117.  The FDCA conditions the dispensing of controlled substances, including pentobarbital, upon either (i) "a written prescription of a practitioner licensed by law to administer such drug," or (ii) "an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist." 21 U.S.C. § 353(b)(1)(B). A prescription requires clinical oversight by a medical doctor, that is, a "bona fide"

order directing "the preparation and administration of a medicine, remedy, or drug for a real patient who actually needs it after some sort of examination or consultation by a licensed doctor." *United States v. Nazir*, 211 F. Supp. 2d 1372, 1375 (S.D. Fla. 2002). As the district court recognized, there is no dispute that Defendants have not obtained, and do not intend to obtain, a valid prescription for pentobarbital, as the FDCA requires. *See* J.A.556, J.A.558-559; J.A.117; J.A.496-497.

Despite the above holdings, the district court denied Plaintiffs' request for injunctive relief to prevent Defendants from continuing to act in violation of the law, holding that "Plaintiffs have not established that flash pulmonary edema is 'certain' or even 'likely' to occur before an inmate is rendered insensate." J.A.120. The court determined that Plaintiffs did not "completely discredit Dr. Antognini's testimony" and did not "completely undermine" Dr. Crowns' conclusions regarding agonal breathing. J.A.122-123.

The district court emphasized that it "continue[d] to be concerned at the possibility that inmates will suffer excruciating pain during their executions." J.A.120. Although the court expressed substantial skepticism about Defendants' experts, it also stated that it could not "weigh the evidence before it in a vacuum" because of the Supreme Court's decision in *Lee*, which addressed "most of the evidence Plaintiffs have presented in this case and found that it was not enough to warrant injunctive relief" on Plaintiffs' Eighth Amendment claim. J.A.123-124.

14

### E.     The District Court Grants Summary Judgment to Defendants on the FDPA Claim

The district court's September 20 order also granted summary judgment to Defendants on Plaintiffs' FDPA claim.  The court noted two important discrepancies between the Government's 2019 Protocol and several of the state statutes at issue:  some state statutes dictate execution methods that differ from the 2019 Protocol (such as by giving the prisoner a choice of electrocution or lethal injection), while others dictate important aspects of the execution process (such as the scheduling of the execution or a requirement that multiple physicians attend it).  *See* J.A.111-112.  The district court recognized that the FDPA requires the Government to follow both types of statutes, but nevertheless granted summary judgment to Defendants based solely on Defendants' non-binding "notice" that they intend to comply or will consider complying with those specific requirements.  *See* J.A.114.

### F.     The District Court Denies Plaintiffs' Rule 59(e) Motions

Plaintiffs subsequently moved, pursuant to Federal Rule of Civil Procedure 59(e), to alter and amend the orders discussed above with respect to the Eighth Amendment, FDCA, and FDPA.  The district court denied those motions on November 3.  J.A.127.

## SUMMARY OF ARGUMENT

*The District Court Erred in Denying Relief for Defendants' FDCA and APA Violations*

The district court correctly held that Defendants are acting contrary to law under the APA by executing Plaintiffs using pentobarbital without obtaining a valid medical prescription, in violation of the FDCA. In the face of this definitive holding, the district court nevertheless concluded that Defendants may continue to execute Plaintiffs in violation of both statutes because Plaintiffs, in its view, failed to show that they will suffer irreparable harm. This result—that Plaintiffs have *no remedy* for clear and proven violations of federal law—cannot stand.

First, the district court applied the wrong standard to Plaintiffs' showing of irreparable harm. Despite Defendants' flouting of the FDCA, the court misconstrued this Court's precedent and *Lee*, a *per curiam* decision narrowly addressing Plaintiffs' Eighth Amendment claim, to preclude injunctive relief for *proven statutory violations*.

Second, by focusing on the precise quantum of probability that pentobarbital would actually cause Plaintiffs to suffer flash pulmonary edema during their executions, the district court fundamentally misconstrued the nature of Plaintiffs' injury. The FDCA is a prophylactic statute designed to mitigate risk of bodily harm from the administration of medications by establishing mandatory safety procedures. As this Court has recognized, medications used in executions are

16

not exempt from the statute's protective purpose. By ignoring the FDCA's prescription requirement—thereby evading all professional medical oversight—Defendants have *necessarily* subjected Plaintiffs to the risk of grievous bodily pain and suffering. This risk is not abstract: the district court itself expressed its continued concerns regarding "*the possibility that inmates will suffer excruciating pain during their executions*." J.A.120 (emphasis added).

In numerous contexts, most recently with respect to COVID-19, courts have found that plaintiffs are entitled to injunctive relief to counter the elevated, non-speculative risk of severe bodily harm. There is no reason for a different result here. Plaintiffs demonstrated below that a medical professional, exercising informed clinical judgment, would assess the execution procedure and likely require that Defendants first administer an opioid or other analgesic in order to all but eliminate the risk that Plaintiffs will suffer the conscious experience of flash pulmonary edema. Indeed the district court endorsed that very approach as an available and reasonable alternative method when it earlier enjoined the 2019 Protocol under the Eighth Amendment.

Third, even assuming *arguendo* that the district court applied the correct irreparable harm standard, its analysis was nevertheless tainted by the mistaken view that the result was preordained by Supreme Court precedent. The court viewed Plaintiffs' evidence through the lenses of *Bucklew v. Precythe*, 139 S.

17

Ct. 1112 (2019), and *Lee*, neither of which is availing.  In *Bucklew*, the credibility of the plaintiff's expert was successfully challenged—unlike here, where Dr. Van Norman's testimony stands unimpeached.  *Lee* also does not dictate the result here because that decision evaluated an Eighth Amendment claim based on the then-available evidence and against a heavy presumption in Defendants' favor due to the "last-minute" nature of the requested relief.  The record now includes the impeachment of Defendants' experts, as well as eyewitness and expert accounts of Mr. LeCroy's execution showing that he suffered flash pulmonary edema while still conscious.

Setting aside the district court's entirely fatalistic view of its fact-finding task, the court also erroneously required Plaintiffs to *entirely discredit* Defendants' experts' testimony—an incorrect requirement that cannot be reconciled with the need to show only a likelihood of irreparable harm.  Because the district court recognized that Dr. Crowns did not consider key evidence that was inconsistent with his conclusions but found no similar flaws in Dr. Van Norman's testimony that flash pulmonary edema is virtually certain to occur, it erred in concluding that Plaintiffs' evidence did not establish a likelihood of irreparable harm.

Finally, the district court's entire inquiry into irreparable harm was misdirected.  As the court held, Defendants' failure to obtain a prescription for pentobarbital was contrary to law in violation of the APA.  The APA could not be

18

more clear that a reviewing court "*shall . . . * hold unlawful and *set aside*" agency action found to be "not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added). The plain language of the APA does not require a plaintiff to establish irreparable harm in order to have unlawful agency action set aside. Because Defendants' use of the 2019 Protocol is unlawful under the APA, Defendants simply cannot continue using it to execute Plaintiffs.

*The District Court Erred in Dismissing Plaintiffs' Eighth Amendment Claim*

The district court further erred in dismissing Plaintiffs' Eighth Amendment claim on the pleadings because it misread *Lee* to foreclose Plaintiffs' Eighth Amendment claim entirely and to set the standard for evaluating Plaintiffs' allegations.

The district court held that *Lee* makes clear that "the use of pentobarbital will withstand Eighth Amendment scrutiny, *no matter the evidence of excruciating pain*," J.A.83, but *Lee* was by no means so far-reaching. *See* 140 S.Ct. at 2591. In the unique context of Plaintiffs' "last-minute" request for a preliminary injunction—which the Supreme Court emphasized should be granted only as "the extreme exception"—the Court held that Plaintiffs failed to establish a likelihood of success in light of the parties' "competing expert testimony" on whether flash pulmonary edema "only occurs *after* the prisoner has died or been rendered fully insensate." *Id*. Although the Court also discussed the use of pentobarbital in over

100 executions as backdrop to its evaluation of the evidence then-presented, that discussion did not purport to foreclose Plaintiffs' allegations, based on studies and reports by medical experts in light of new and evolving evidence, including from the recent execution of former plaintiffs. This Court itself has declined to read *Lee* as terminating Eighth Amendment challenges to pentobarbital, rejecting emergency relief on Plaintiff Nelson's Eighth Amendment claim not because *Lee* is dispositive of all Eighth Amendment claims, but because of "*the absence of further fact-finding by the district court*."  J.A.914.

The district court compounded its misreading of *Lee* by ignoring the settled Fed. R. Civ. P. 12(b)(6) standards that apply to a motion to dismiss. *Lee* did not purport to change those standards, yet the district court ruled that *Lee* compelled dismissal at the pleading stage based on *Lee*'s analysis of competing evidence. The question under Fed. R. Civ. P. 12(b)(6), however, is whether Plaintiffs have plausibly stated a claim on which relief can be granted. In making that determination, the district court must accept as true Plaintiffs' allegations—including that flash pulmonary edema is virtually certain to occur and cause Plaintiffs' excruciating pain—and draw all reasonable inferences in their favor. *Lee*'s holding that Plaintiffs failed to demonstrate a "substantial likelihood of success" based on an incomplete factual record simply cannot be read to require outright dismissal of Plaintiffs' Eighth Amendment claim.

*The District Court Erred in Granting Summary Judgment for Defendants on Plaintiffs' FDPA Claim*

Finally, the district court erred in granting Defendants summary judgment on Plaintiffs' FDPA claim.  First, the court erroneously relied on Defendants' bare representations that they would comply with the relevant state statutes' requirements to conclude that the controversy was effectively moot, despite the fact that nothing prevents Defendants from doing otherwise.  Second, instead of addressing whether there was a genuine dispute of material fact, the court prematurely focused on irreparable harm, which is relevant to the appropriate remedy, not whether Defendants violated the law in the first place, and which requires additional discovery regarding the ramifications of Defendants' failure to comply with state law requirements.

## STANDARD OF REVIEW

A district court's decision granting a motion to dismiss or for summary judgment is reviewed *de novo*.  *See, e.g.*, *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012); *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020).  A district court's grant or denial of a permanent injunction is reviewed for abuse of discretion, which includes *de novo* review of the district court's legal conclusions and review of factual findings for clear error.  *United States v. Anthem, Inc.*, 855 F.3d 345, 352-53 (D.C. Cir. 2017); *United States v. Regenerative Sciences LLC*, 741 F.3d 1314, 1318 (D.C. Cir. 2014).

21

**ARGUMENT**

I.   **THE DISTRICT COURT ERRED IN DENYING PLAINTIFFS' REQUEST TO PREVENT DEFENDANTS FROM CONTINUING TO VIOLATE THE FDCA**

The district court granted summary judgment on Plaintiffs' FDCA and APA claim, correctly holding that Defendants' carrying out of the 2019 Protocol violates the FDCA, and thus is contrary to law under the APA, because Defendants will continue to administer pentobarbital without a valid prescription from medical professionals exercising informed clinical judgment.  J.A.116-117.  Despite this holding, the district court incorrectly denied Plaintiffs' requested injunctive relief on the same claim, allowing Defendants to execute two Plaintiffs in blatant violation of the FDCA and the APA.  That denial constitutes reversible error.

As set forth below, the district court applied the wrong standard to Plaintiffs' requested relief; overlooked the purpose of the FDCA and misconstrued the irreparable harm caused by Defendants' continuing violation of its mandates, which is sufficient under any standard; failed to appropriately resolve the conflicting evidence before it, all while recognizing that the unresolved conflict places each Plaintiff at risk of suffering an excruciatingly painful execution; and failed to recognize that the APA requires a court to set aside unlawful agency action without any showing of irreparable harm.

22

### A.     The District Court Applied the Wrong Standards for Final Injunctive Relief

First, assuming that Plaintiffs were even required to show irreparable harm to prevent Defendants from their continuous violation of the FDCA (and they were not, *see infra* § I.D), the district court erred by misapplying the standard for irreparable harm under *Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985). The district court erroneously interpreted *Wisconsin Gas* as imposing a "certainty" element for irreparable harm.   J.A.118-119.   It is undisputed that, in order to demonstrate irreparable harm, a plaintiff must show that "the injury [is] both certain and great; it must be actual and not theoretical." *See Wis. Gas*, 758 F.2d at 674.   But *Wisconsin Gas* itself recognizes that Plaintiffs need only show "that irreparable injury is '*likely*' to occur."   758 F.2d at 674 (emphasis added); *see also Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 162 (2010) (noting that a permanent injunction "guard[s] against a[] present or imminent risk of likely irreparable harm"); *Center for Biological Diversity v. Ross*, No. 18-112, 2020 WL 4816458, at *10 (D.D.C. Aug. 19, 2020).

Indeed, *Wisconsin Gas* used "certain" to modify "injury" alone, not "irreparable injury" together.   *See* 758 F.2d at 674.   Thus, "certain" describes *the type* of "injury" required—an actual injury, rather than a theoretical one—not *the quantum of proof* for the "irreparable injury" element.   Even Defendants agree; they equated "certain" with "concrete" rather than "indisputable."   ECF No. 246 at 29.

23

The district court committed further legal error by misreading *Lee* to preclude a grant of injunctive relief on any claims related to the 2019 Protocol. J.A.123-124 (stating that "[t]he Supreme Court has already addressed most of the evidence Plaintiffs have presented in this case and found that it was not enough to warrant injunctive relief"). *Lee*'s holding was limited to constitutional claims only; neither the FDCA nor the APA requires Plaintiffs to establish cruel and unusual punishment in order to justify enjoining Defendants from continuing to violate federal law. *See, e.g.*, *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 613-14 (D.C. Cir. 1980); *see also Doe v. Mattis*, 928 F.3d 1, 7 (D.C. Cir. 2019); *Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274 (D.D.C. 2015). The district court's misapplication of the standard for an injunction in the FDCA and APA context was thus erroneous.

### B.    Plaintiffs' Irreparable Harm Is Sufficient Under any Standard

Second, the district court erred by misconstruing the nature of Plaintiffs' irreparable harm. Although the district court stated that "Plaintiffs have not established that flash pulmonary edema is 'certain' or even 'likely' to occur before an inmate is rendered insensate," the district court recognized that flash pulmonary edema is a real, non-speculative medical risk arising from the 2019 Protocol. J.A.120 ("[T]he court continues to be concerned at the possibility that inmates will suffer excruciating pain during their executions."). As such, it is the

24

precise type of risk that the FDCA is designed to reduce, if not eliminate.  In the context of a demonstrated violation of a prophylactic statute, the elevated risk of severe bodily harm is thus sufficient to require injunctive relief.

### 1.    The FDCA is designed to ensure the humane use of prescription drugs, like pentobarbital

The FDCA "exist[s] in order to ensure that . . . drugs operate humanely."  J.A.496.  As this Court has recognized, and the district court reaffirmed below, violations of the FDCA carry "the risk that the drug[s] will not function as intended."  *Beaty v. FDA*, 853 F. Supp. 2d 30, 37 (D.D.C. 2012), *aff'd in relevant part sub nom. Cook v. FDA*, 733 F. 3d 1 (D.C. Cir. 2013); *see also* J.A.496 (district court reaffirming same).  "[A] lethal injection drug that does not function as intended may 'result in conscious suffocation, pain, and cardiac arrest,'" particularly where "as here, Defendants have justified the Protocol on the grounds that pentobarbital will render inmates insensate during the execution process."  J.A.557-558 (quoting *Beaty*, 853 F. Supp. 2d at 37); *see* J.A.558 ("Where the government argues that a lethal injection drug is legally and constitutionally permissible because it will ensure a 'humane' death, it cannot then disclaim a responsibility to comply with federal statutes enacted to ensure that the drugs operate humanely.").

Through its prescription mandate, the FDCA seeks to ensure appropriate medical oversight regarding the disbursement and administration of certain drugs.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133

(2000). In the context of a drug used for carrying out an execution, this means that medical professionals must be consulted in order to obtain the drug and ensure that the drug is administered in a humane way that reduces or eliminates unnecessary pain and suffering. A valid medical prescription requires a physician's consideration of "the actual needs of the patient, the quantity of the drug he prescribed, [and] the type of drugs he prescribed and for what purpose." *United States v. Smith*, 573 F.3d 639, 652-53 (8th Cir. 2009).

In this case, the FDCA provides a critically important safeguard by mandating the involvement of medical professionals to ensure that pentobarbital is administered in a way that reduces the risks of excruciating pain and suffering. Such safeguards are especially necessary where Plaintiffs have provided extensive evidence that pentobarbital will cause flash pulmonary edema resulting in "sensations of drowning and asphyxia,' and therefore, . . . 'extreme pain, terror and panic.'" J.A.346. The administration of pentobarbital in violation of the FDCA carries "the risk that the drug[s] will not function as intended." *Beaty*, 853 F. Supp. 2d at 37; J.A.557-558 ("[A] lethal injection drug that does not function as intended may 'result in conscious suffocation, pain, and cardiac arrest'").

The relevant issue, therefore, is not whether unprescribed pentobarbital is worse than prescribed pentobarbital, as the district court erroneously framed it in denying Plaintiffs relief. J.A.120. Rather, the question is whether Defendants'

26

ongoing failure to comply with the FDCA's mandates irreparably harms Plaintiffs by circumventing the very safeguards that aim to prevent the real, non-speculative risk of pain and suffering. "[W]hen federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002). In this case, the answer to that question is "yes."

### 2. Health risks of the type Plaintiffs have shown routinely satisfy the standard for irreparable harm and thus justify injunctive relief

Courts repeatedly have held that a heightened risk of bodily harm—like the risk of pain and suffering at issue here that the district court itself recognized, *see* J.A.120—will justify injunctive relief. *See Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 20 (D.D.C. 2005); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019) ("risk of further attempts at self-castration, and possibly suicide" unless transgender prisoner is provided gender confirmation surgery). For example, numerous courts have recently held that a detainee's elevated risk of exposure to COVID-19 constitutes irreparable harm. *See, e.g.*, *Wilson v. Williams*, 455 F. Supp. 3d 467, 479 (N.D. Ohio 2020), *vacated on other grounds*, 961 F.3d 829, 844 (6th Cir. 2020) ("The district court correctly noted that inmates at Elkton face a *risk* of irreparable injury *if* they are infected by COVID-19.") (emphasis added); *Banks v.*

27

*Booth*, No. 20-849, 2020 WL 3303006, at *16 (D.D.C. June 18, 2020) (inmate's "*risk* of contracting COVID-19 and the resulting complications . . . is the prototypical irreparable harm"), *appeal filed*, No. 20-5216 (D.C. Cir. July 22, 2020); *see also Gayle v. Meade*, No. 20-21553-Civ, 2020 WL 3041326, at *21 (S.D. Fla. June 6, 2020) ("Even in the early days of the pandemic, and with few exceptions, courts did not hesitate to find irreparable harm as a result of *potential* COVID-19 exposure in prison and detention, including in facilities where there had not been a confirmed case." (emphasis added)).

In these cases, courts granted injunctive relief based on "grave *risks* to health [that] are *not an insignificant possibility*" given the elevated chances of infection. *Mays v. Dart,* 456 F. Supp. 3d 966, 1015 (N.D. Ill. 2020) (emphasis added), *aff'd in rel. part, rev'd in part on other grounds*, 974 F.3d 810 (7th Cir. 2020); *accord Williams v. Zbaraz*, 442 U.S. 1309, 1314 (1979) (Stevens, J. as a circuit justice) (denying stay of injunction based on exposure to "considerable risk of severe medical problems").

The district court erred in misconstruing the irreparable harm test to require that Plaintiffs demonstrate a certainty or likelihood that they *will* suffer flash pulmonary edema while sensate during their executions. J.A.118-119. This framing obscures the significant and elevated risks of suffering to which Plaintiffs will be exposed based on Defendants' refusal to comply with the FDCA. *See Zino Davidoff*

*SA v. CVS Corp.*, 571 F.3d 238, 247 (2d Cir. 2009) (finding irreparable harm where there was an "increased the risk that consumers would unwittingly purchase counterfeit or defective product because of the disabling of [plaintiff's] device to guard against these things"); *see also Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (finding irreparable harm based on elevated risks of "pain, infection, amputation, medical complications, and death due to delayed treatment" from the planned closure and reduction of rehabilitative health services in plaintiffs' county).

As Plaintiffs have demonstrated, flash pulmonary edema occurs in the "vast majority, if not all" of pentobarbital executions, and it is "extremely likely" that the prisoners will "retain consciousness long enough to experience pain and suffering during the execution process using single-drug pentobarbital." Van Norman Decl. J.A.146, J.A.170. Recent developments further highlight that the risk Plaintiffs face is real and concrete. *See generally* ECF No. 282 (describing additional evidence that Plaintiff LeCroy suffered from flash pulmonary edema while still conscious and responsive during his execution on September 22, 2020). Three journalists observed symptoms of flash pulmonary edema that Plaintiff LeCroy suffered following administration of pentobarbital, including observations that LeCroy's chest began to "jerk and contract uncontrollably" almost immediately after the drug was administered. ECF No. 282 at 2-3; ECF No. 282-1 at 1; J.A.665,

J.A.672-674.  Drs. Van Norman and Edger explained that Mr. LeCroy's immediate distress as inconsistent with agonal breathing in the moments just before death, that the witness reports provided "a class description of attempts to breathe against an obstructed airway" as Mr. LeCroy experienced flash pulmonary edama, and that Mr. LeCroy was conscious of his suffering at the time as evidenced by the opening and closing of his eyes.  J.A.831-832; J.A.841-842.

The district court expressly acknowledged that Plaintiffs will face this risk when it stated:  "*the court continues to be concerned at the possibility that inmates will suffer excruciating pain during their executions*."  J.A.120 (emphasis added).  The district court's acknowledgment that "[t]he record contains conflicting evidence" on whether Plaintiffs will in fact suffer from flash pulmonary edema in their executions—and its inability to resolve that conflict definitively, J.A.120-123—only underscores *the risk* that Plaintiffs face in light of Defendants' failure to comply with the law.  *Al-Joudi*, 406 F. Supp. 2d at 20.  This risk is precisely the sort of harm against which the FDCA is meant to protect.

### 3.    The FDCA's safeguards would mitigate or eliminate the risks of harm caused by Defendants' non-compliance

Defendants' violations of the FDCA (and, as a result, the APA), will expose Plaintiffs to severe and unnecessary risks of excruciating suffering during their executions.  If Defendants were required to follow the statute, the risk that Plaintiffs would endure severe and unnecessary suffering could be reduced or

eliminated.  The district court erroneously reasoned that the prescription requirement will not diminish the risk of conscious pulmonary edema because it assumed, without basis, that "the BOP [will] find[] a doctor to write a prescription" so "Plaintiffs will still be executed using pentobarbital."  J.A.120.

The district court misapprehended the purpose of the FDCA's prescription requirement and incorrectly assumed that obtaining a prescription was effectively a *pro forma* requirement.  *See* J.A.120.  As Plaintiffs demonstrated, however, a well-informed clinician, applying appropriate clinical judgment and evaluation of the current scientific evidence, would likely require Defendants to inject an opioid or similar analgesic before administering pentobarbital.  J.A.360-361; J.A.229-234.  Indeed, when a prescription drug creates a health risk, medical professionals routinely diminish that risk by prescribing an additional drug.  For example, women experiencing the effects of menopause and who are prescribed estrogen replacement therapy are generally *also* prescribed progesterone in order to reduce the risk of endometrial cancer from estrogen alone.  *See* Mayo Clinic, *Hormone Therapy:  Is it Right for You?*  (June 9, 2020).[4]

Notably, when reviewing Plaintiffs' Eighth Amendment claim, the district court endorsed Plaintiffs' two-drug alternative—which involves the

---

[4]    Available   at   https://www.mayoclinic.org/diseases-conditions/menopause/in-depth/hormone-therapy/art-20046372.

administration of an opioid or other analgesic before the administration of pentobarbital—as "a simple addition to the execution procedure that is likely to be as effective as it is easily and quickly administered." J.A.461, *vacated on other grounds by Lee*, 140 S. Ct. 2590. But for unexplained reasons Defendants have eschewed this simple step. Instead, they evade their statutory duty to consult licensed medical practitioners, which would include formal medical assessments informed by prevailing medical science, as well as viable ways in which to diminish the risk of grave bodily harm. The loss of these statutory protections and the concomitant risk of severe suffering recognized by the district court is sufficient to justify injunctive relief, and the district court erred in denying it.

### C.    Even if the District Court Applied the Correct Irreparable Harm Standard, it Erred by Abdicating its Factfinding Responsibilities and Requiring Plaintiffs to Discredit Defendants' Evidence Entirely

Third, even assuming *arguendo* that the district court applied the correct irreparable harm standard, the district court made other critical errors. First, the district court misread the Supreme Court's decisions in *Bucklew* and *Lee* to foreclose the possibility that Plaintiffs' evidence was sufficient to show irreparable harm. Second, the district court improperly required Plaintiffs to "completely undermine" Dr. Crowns' conclusions in order to demonstrate irreparable harm.

32

### 1. The district court wrongly abdicated its factfinding responsibilities in light of the Supreme Court's rulings in *Bucklew* and *Lee*

"The trial judge is the most important agency of the judicial branch of the government precisely because on it rests the responsibility of ascertaining the facts. . . . For that very reason every effort should be made to render it as adequate as it humanly can be." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, No. Civ.A. 90-1992, 1996 WL 377147, at *3 (D.D.C. June 24, 1996) (quoting *United States v. Forness*, 125 F.2d 928, 943 (2d Cir. 1942)). Thus, a district court is generally not free to delegate its factfinding responsibilities by substituting another court or party's factual findings for its own in the first instance. *See* Fed. R. Civ. P. 52(a).

Here, however, the district court partially abdicated its factfinding responsibilities by incorrectly reading *Bucklew* and *Lee* to dictate certain factual and credibility findings. Thus, despite the district court's concern that Dr. Antognini's research was "rather old" and dealt primarily with animals as opposed to humans, the district court gave his reports and testimony some weight simply because the Supreme Court relied on Dr. Antognini's testimony on the effects of pentobarbital in *Bucklew*. J.A.123. But *Bucklew* involved a fundamentally different set of facts and evidence. The Supreme Court stressed in its discussion of the pentobarbital evidence in *Bucklew* that the plaintiff's expert "was evasive" and "crossed up the numbers" in his testimony, in contrast to Dr. Antognini. 139 S. Ct. at 1132. The

33

district court did not (and could not) cite any such issues with respect to Plaintiffs' expert evidence in this case, including Dr. Van Norman's declarations (and, notably, Defendants did not even question Dr. Van Norman).

The district court also erred in rejecting Plaintiffs' evidence on the ground that "[t]he Supreme Court . . . already addressed most of the evidence Plaintiffs have presented in this case and found that it was not enough to warrant injunctive relief." J.A.123-124 (citing *Lee*, 140 S. Ct. at 2592). In doing so, the district court misread *Lee*, in which the Supreme Court emphasized that the "competing expert testimony" was insufficient to "justify *last-minute* intervention by a Federal Court." 140 S. Ct. at 2591 (emphasis added). Here, by contrast, Plaintiffs filed their motions for partial summary judgment and permanent injunctive relief *months* before the currently scheduled execution dates.

The evidence before the Supreme Court in *Lee* was also substantially different. The Supreme Court did not have the benefit of Plaintiffs' cross-examinations of Drs. Crowns and Antognini when it decided *Lee*. J.A.122. Nor did it have evidence pertaining to Mr. LeCroy's execution, including four eyewitness accounts and two supplemental expert declarations showing that Mr. LeCroy suffered from flash pulmonary edema while still conscious. J.A.132. By giving the Supreme Court's decisions in *Bucklew* and *Lee* controlling weight on the question

34

of irreparable harm, the district court failed to conduct an independent analysis of the facts and evidence before it as required by Fed. R. Civ. P. 52(a).

The district court compounded its error when denying Plaintiffs' Fed. R. Civ. P. 59(e) motion.  The court reasoned that Plaintiffs cannot show irreparable harm unless they present "evidence that casts doubt on the more than 100 executions carried out using pentobarbital and which refutes data upon which the Supreme Court has relied in finding that pentobarbital will not cause an unconstitutional level of pain." J.A.133.  But Plaintiffs need not show an "unconstitutional level of pain" under the Eighth Amendment to obtain a permanent injunction on an *FDCA and APA* claim.  Plaintiffs needed only to show—and did show—that the absence of clinical oversight, as required by the FDCA, gives rise to "grave risks to health [that] are not an insignificant possibility." *Mays v. Dart*, 453 F. Supp. 3d 1074, 1098 (N.D. Ill. 2020).

For that matter, Plaintiffs' evidence *does* "cast doubt" on the proposition that the pentobarbital executions carried out to date have proceeded "without incident."  J.A.133 (quoting *Lee*, 140 S. Ct. at 2591).  The scientific evidence of record—which the district court credited over the competing testimony of the Government's anesthesiologist (J.A.122-123)—is that pentobarbital inhibits the prisoner's responsiveness to pain, but *not* the ability to experience such pain while still conscious.  J.A.152 (noting that "authoritative publications" now describe

35

barbiturates as producing "unresponsiveness" rather than "unconsciousness").  A pentobarbital execution that inflicts excruciating pain will *appear* to be "without incident" when the prisoner is disabled from expressing pain.  J.A.840.

### 2.    The district court wrongly required Plaintiffs to "completely undermine" the Government's expert evidence

To the extent the district court independently assessed the credibility of Drs. Crowns and Van Norman, the court erred by requiring Plaintiffs to "*completely undermine*" Dr. Crowns' testimony to prevail on their request for injunctive relief. J.A.122 (emphasis added).  Dr. Crowns' testimony posed no obstacle to that showing.

Plaintiffs introduced evidence that Dr. Crowns was a pathologist and therefore not qualified to testify about the effects of pentobarbital on the brain—an issue on which the district court favored the opinion of anesthesiologist Dr. Van Norman over that of anesthesiologist Dr. Antognini.  *See* J.A.839-840; J.A.843; J.A.122-123.  Plaintiffs also introduced evidence that many of the prisoners who were executed with pentobarbital exhibited violent physical responses prior to dying that were in no way consistent with Dr. Crowns' description of the "slow, periodic, deep agonal respiration of cardiac arrest," J.A.839, and that even prisoners who showed no external signs of respiratory distress were nevertheless suffering the conscious experience of flash pulmonary edema.  J.A.840.

As the district court acknowledged, Plaintiffs further identified a serious flaw in Dr. Crowns' testimony—namely, that "he was unaware of more recent news reports from the executions of Lee, Honken, Purkey, and Mitchell describing the inmates as showing labored breathing, gasping for breath, or heaving," which contradicted the non-eyewitness accounts on which he based his opinion. J.A.123. This evidence was more than sufficient to undermine Dr. Crowns. Contrary to the district court's reasoning, Plaintiffs were not required to discredit Defendants' evidence *entirely* in order to prevail on their request for injunctive relief, even accepting the district court's view that Plaintiffs needed to establish that flash pulmonary edema is likely to occur before an inmate is rendered insensate.

### D. The District Court Erred by Failing to Apply the Plain Language of the APA

The district court's order should be reversed for the separate and independent reason that, based on the plain text of the APA, no showing of irreparable harm was necessary. The APA states in no uncertain terms that a reviewing court "*shall* … hold unlawful and *set aside*" agency action found to be "not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added). Courts have routinely held that the APA gives rise to a "presumption" that unlawful agency action "should be set aside in its entirety." *Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1094 (9th Cir. 2020); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019). Having concluded that Defendants' use of the 2019

Protocol is contrary to law because it fails to comply with the FDCA's mandates, and having granted summary judgment to Plaintiffs on this claim under the APA, the district court was required to apply "the APA's command that [agency action] found to be" contrary to law "shall be not only 'h[e]ld unlawful' but 'set aside.'" *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting 5 U.S.C. § 706(2)); *see also id.* ("[O]nce the court reached the conclusion that the [agency] rule was indeed illegal, . . . there was no separate need to show irreparable injury.") (citing Wright & Miller, *Federal Practice and Procedure* § 2944, at 94 (2d ed. 1995)); *United Steel*, 925 F.3d at 1287 ("The ordinary practice is to vacate unlawful agency action.").[5]

Plaintiffs acknowledge this Court's previous order vacating the injunction as to Plaintiff Nelson's execution and directing the district court to consider the issue of irreparable harm in connection with Plaintiff Nelson's FDCA claim, J.A.916, but respectfully submit that the district court erred by not taking into account the mandatory language of Section 706 of the APA. That language controls

---

[5] *See also Checkosky v. S.E.C.*, 23 F.3d 452, 491 (D.C. Cir. 1994) ("Section 706(2)(A) [of the APA] provides that a 'reviewing court' faced with an arbitrary and capricious agency decision 'shall'—not may—'hold unlawful and set aside' the agency action.") (Randolph, J. writing separately).

*(cont'd)*

here given the nature of Plaintiffs' claim.[6]  The cases cited by the Court's previous order do not undermine the presumption of equitable relief for an agency's illegal policy or practice.  Indeed, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), did not involve a claim brought under the APA, but rather addressed claims arising from the Patent Act, which specifically provides for permissive injunctive relief. 547 U.S. at 392.  Similarly, *Withrow v. Larkin*, 421 U.S. 35, 44-45 (1975), did not involve the APA, but rather a motion for preliminary injunction based on violation of state law.

## II.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' EIGHTH AMENDMENT CLAIM

### A.    Plaintiffs Have Pleaded a Viable Eighth Amendment Claim

The district court erred in dismissing Plaintiffs' Eighth Amendment claim as a matter of law.  J.A.83.  In order to properly plead a violation of the Eighth Amendment based on cruel and unusual punishment, Plaintiffs must allege that (1) the lethal injection protocol "presents a risk that is sure or very likely to cause serious illness and needless suffering," which requires a showing of a "substantial risk of serious harm" or a "demonstrated risk of severe pain," and (2) "that the risk is substantial when compared to the known and available alternatives."  *Glossip v.*

---

[6] Neither the Nelson parties nor this Court focused on the language in Section 706 of the APA during the frenzied rush of litigation on Defendants' motion to vacate Plaintiff Nelson's injunction, which was briefed and ruled upon in a single day.

*Gross*, 576 U.S. 863, 877-78 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50, 61 (2008)).  Plaintiffs' allegations readily meet this bar under well-established motion to dismiss standards.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

       The Amended Complaint contains specific and detailed allegations that prisoners executed in accordance with Defendants' 2019 Protocol, which calls for the administration of five grams of pentobarbital, will suffer flash pulmonary edema, which "produces sensations of drowning and asphyxiation" prior to becoming unconscious or insensate, causing "extreme pain, terror and panic."   J.A.346. Indeed, Plaintiffs have alleged with particularity that:

- "Barbiturates such as pentobarbital 'do not guarantee lack of consciousness'" (J.A.345);

- "Defendants' supplies of pentobarbital . . . show [elevated] pH readings" (J.A.345);

- "As a result of pentobarbital's high pH level, injection of a high dose of pentobarbital . . . will cause 'flash' or non-cardiogenic pulmonary edema 'virtually instantaneous[ly],'" (J.A.345);

- "The experience of acute pulmonary edema *prior to the loss of consciousness* 'produces sensations of drowning and asphyxia,' and therefore, 'the experience of this condition in an inmate who was still sensate would result in extreme pain, terror and panic'" (J.A.346 (emphasis added));

40

- "It is . . . 'extremely likely' that prisoners executed with pentobarbital will experience sensations of drowning and suffocation when they die" (J.A.347);

- "A review of over two dozen autopsy reports confirms that it is a 'virtual medical certainty' that most, if not all, prisoners executed with a single dose of pentobarbital, as is contemplated by the 2019 Protocol, experienced '*immediate*, flash pulmonary edema'" (J.A.347 (emphasis added)); and

- "Witness reports of executions also confirm that prisoners who were executed with a single dose of pentobarbital . . . experienced acute symptoms of pulmonary edema, including burning sensations, labored breathing, gasping, and other signs of severe pain and respiratory distress" (J.A.349).

The Amended Complaint's allegations are based upon, and supported by, extensive evidence from medical experts, including Gail Van Norman, M.D. (J.A.140), Mark A. Edgar, M.D. (J.A.253), Michaela Almgren, Pharm.D., M.S. (J.A.275), and Craig W. Stevens, Ph.D. (J.A.228).  *See* J.A.345-358, J.A.360-362.

These allegations are more than sufficient to state a claim per *Glossip*. Multiple courts have held that similar allegations regarding other lethal injection protocols were sufficient to survive a motion to dismiss.  *See Wilson v. Dunn*, No. 2:16-CV-364, 2017 WL 5619427, at *4 (M.D. Ala. Nov. 21, 2017); *McGehee v. Hutchinson*, No. 4:17-cv-00179, 2017 WL 1381663, at *22 (E.D. Ark. Apr. 15, 2017); *Price v. Dunn*, No. 14-0472, 2015 WL 6962854, at *3, *5 (S.D. Ala. Oct. 20, 2015).

41

Despite the sufficiency of Plaintiffs' allegations, the district court dismissed their Eighth Amendment claim based on the Supreme Court's decision in *Lee*. This ruling constituted reversible error for the reasons explained below.

### B. The District Court's Holding that *Lee* Creates a Categorical Bar to Plaintiffs' Claim Is Based on a Fundamental Misreading of *Lee*

While acknowledging the possibility that it "read *Lee* too broadly" (J.A.83), the district court concluded that *Lee* stands for the proposition that "the use of pentobarbital will withstand Eighth Amendment scrutiny, *no matter the evidence of excruciating pain*." J.A.83 (emphasis added). Indeed, on reconsideration, the district court rejected evidence that Plaintiff LeCroy suffered from flash pulmonary edema because "such new evidence . . . simply adds another data point in support of an argument the Supreme Court has already rejected." J.A.131.

The district court's reading cannot be squared with the test set forth in *Glossip* (i.e., that a plaintiff must allege a "demonstrated risk of severe pain," as required to show that the protocol is "sure or very likely to cause serious illness and needless suffering"). The *Lee* Court never suggested that it altered, heightened, or overturned the test in *Glossip*. Rather, *Lee*'s holding, which reviewed Plaintiffs' Eighth Amendment claim under the standard for a preliminary injunction, hinged upon the existence of the parties' "competing expert testimony" regarding whether the use of pentobarbital would create flash pulmonary edema in prisoners prior to rendering them insensate. *Lee*, 140 S. Ct. at 2591.

42

While *Lee* discussed pentobarbital's current use in a number of states and approval by other courts in different contexts, that discussion was expressly described as mere "backdrop" to illustrate the "exceedingly high bar" that Plaintiffs faced in ultimately *succeeding* on their claim—a showing required for a preliminary injunction. *Lee*, 140 S. Ct. at 2591. But this "backdrop" discussion did not—and cannot reasonably be read to—suggest that "no amount of new evidence" could suffice to successfully plead or prove Plaintiffs' Eighth Amendment claim, let alone that Plaintiffs' detailed and extensive allegations were barred as a matter of law. J.A.82.

In fact, if *Lee*'s "backdrop" discussion were read—as the district court did—to hold that constitutional challenges to the use of pentobarbital could never be adequately pleaded or proven, that holding would have rendered the final paragraph of *Lee* utterly superfluous, as there would have been no need for the Supreme Court to address the specific "competing" evidence Defendants presented in order to determine that Plaintiffs failed to establish a likelihood of success. 140 S. Ct. at 2591. The district court erred by considering the "backdrop" section in isolation, instead of in conjunction with the language following it.

Furthermore, the Supreme Court noted that the competing expert evidence indicated "that any pulmonary edema occurs only *after* the prisoner has died or been rendered fully insensate," necessarily suggesting that if pulmonary

43

edema occurs *before* death or unconsciousness, the pain and suffering it causes

would indeed be sufficient to succeed on an Eighth Amendment claim. *Lee*, 140 S.

Ct. at 2591. That is a far cry from holding, as the district court concluded *Lee* did,

that "the use of pentobarbital will withstand Eighth Amendment scrutiny, no matter

the evidence of excruciating pain." J.A.83.

More fundamentally, this Court has not read *Lee* to reject all

pentobarbital claims as implausible as a matter of law, as the district court incorrectly

did here. Instead, this Court, in addressing Plaintiff Nelson's emergency application

for a stay of execution, expressly noted that it was prevented from reaching a

different conclusion due to the lack of new evidence. *See* J.A.914 ("[W]e must, *in*

*the absence of any further fact-finding by the district court*, reach the same

conclusion here [as the Supreme Court in *Lee*]." (emphasis added)). This holding

expressly leaves open the possibility that new evidence could lead to a different

result than *Lee* reached in the preliminary injunction posture.

## C.    The District Court Applied the Incorrect Standard to Defendants' Motion to Dismiss

Compounding (and related to) its overreading of *Lee*, the district court

further erred by applying the incorrect standard to Plaintiffs' claim. It is well

established that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeks to test the

legal sufficiency of a complaint, *not* "a plaintiff's ultimate likelihood of success on

the merits." *United States v. Ghana Soc. Mktg. Found.*, No. 11-418, 2012 WL

13076832 at *1 (D.D.C. Aug. 8, 2012); *Beck v. U.S. Gov't*, 318 F. Supp. 3d 55, 60 (D.D.C. 2018), *aff'd*, 777 F. App'x 525 (D.C. Cir. 2019). Under that test, "a court must construe the complaint in the light most favorable to the plaintiffs and 'must *assume the truth* of all well-pleaded allegations.'" *Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260, 264 (D.D.C. 2017). The court's review on a motion to dismiss is limited to the four corners of the complaint, along with documents referenced or incorporated therein, and matters as to which the court may take judicial notice. *Crawford v. Duke*, 867 F.3d 103, 108 (D.C. Cir. 2017).

Notwithstanding these well-established principles—as well as Plaintiffs' extensive and detailed allegations, which make clear that the Amended Complaint satisfies the *Twombly*/*Iqbal* standard—the district court held that *Lee* compelled dismissal of Plaintiffs' claim. But *Lee* was decided under the standard for a *preliminary injunction*, which places the burden on the moving party to demonstrate a "substantial likelihood of success" on the merits of the claim based on the evidentiary record at the time. 140 S. Ct. at 2591. Applying that highly exacting standard, the *Lee* Court ruled that "plaintiffs have not established that they are likely to succeed on the merits of their Eighth Amendment claim." *Id.* In fact, the Court emphasized that the applicable standard was *even higher* due to the "last-minute" nature of the injunctive relief sought, which the Court stated should be granted only as "the extreme exception." *Id.* (quoting *Bucklew v. Precythe*, 139 S.

45

Ct. 1112, 1134 (2019)); *see also id.* (plaintiffs "have not made the showing required to justify last-minute intervention by a Federal Court").

On a motion to dismiss, by contrast, it is settled that the burden is not on Plaintiffs to show a "substantial likelihood of success"—rather, the court must draw all reasonable inferences in Plaintiffs' favor based on the pleading alone. *See Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 126 (D.D.C. 2019). The district court accordingly was required to evaluate the sufficiency of the pleadings without testing their truth by reference to extrinsic evidence put forth by Defendants, "competing" or otherwise. *See Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 27 (D.D.C. 2017); *Antoine v. U.S. Bank Nat'l Ass'n*, 547 F. Supp. 2d 30, 38 n.4 (D.D.C. 2008).

The district court also failed to acknowledge the inherently tentative nature of the *Lee* decision, which was based on an incomplete factual record. Such a ruling is distinct from both an analysis of the legal sufficiency of the pleading and the ultimate merits of the claim. As this Court has succinctly explained: "A preliminary injunction is just that—preliminary. It does not substitute for a trial, and its usual office is to hold the parties in place until a trial can take place." *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004); *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("The purpose of [a preliminary injunction] is not to conclusively determine the rights of the parties."); *S. Poverty Law Ctr. v. U.S. Dep't Homeland Sec.*, No. 18-760, 2020 WL 3265533, at *3 n.2

(D.D.C. June 17, 2020) ("[W]hether to grant preliminary relief is frequently based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.'") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)), *appeal filed*, No. 20-5257 (D.C. Cir. Aug. 26, 2020).

In fact, in many instances, courts have held in one party's favor on a preliminary injunction motion, only to hold in the other party's favor on the ultimate merits of the case based on a complete record. *See, e.g.*, *Garnett v. Zeilinger*, No. 17-cv-1757, 2020 WL 5411295, at *18 (D.D.C. Sept. 9, 2020); *Navajo Nation v. Azar*, 302 F. Supp. 3d 429, 434, 441 (D.D.C. 2018); *Career Coll. Ass'n v. U.S. Dep't of Educ.*, No. 92-1345, 1992 WL 233837, at *1 (D.D.C. Aug. 31, 1992).

The district court here nevertheless conflated these distinct standards and analyses. For example, the district court stated that it would "seem contrary to *Lee* for this court to enter judgment on these facts and find an Eighth Amendment violation." J.A.82. But the district court was not asked to "enter judgment" or "find a violation" at the motion to dismiss stage; rather, the district court's task was to determine whether Plaintiffs plausibly stated a claim for relief based on the sufficiency of the allegations in the Amended Complaint. *See, e.g.*, *Iqbal*, 556 U.S. at 678. Indeed, elsewhere in its dismissal order, the district court appeared to acknowledge that Plaintiffs' Amended Complaint contained sufficient factual matter to survive a motion to dismiss. J.A.81 ("This court . . . noted that Plaintiffs in this

47

case—unlike those in other cases—had amassed an extensive factual record pointing to a 'virtual medical certainty' that use of pentobarbital would result in 'excruciating suffering.'").  Accordingly, the district court's order of dismissal should be reversed.

## III.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFFS' FDPA CLAIM

The district court correctly concluded that the FDPA requires Defendants to follow state execution procedures codified in state statutes, but nonetheless found that Defendants were entitled to summary judgment in relation to Plaintiffs' FDPA claim.  The district court's grant of summary judgment should be reversed for two reasons.

First, the district court wrongly relied upon Defendants' statement expressing an intent to comply with the relevant state statutes during future executions.  In its analysis, the district court cited *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997), which stated:  "Even where litigation poses a live controversy when filed . . . a federal court [must] refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  However, that case is distinguishable because it involved a situation where *binding* legislation was passed affecting the parties' rights after the suit was filed. Here, by contrast, nothing binds the Government to its informal statements of intent.

48

Indeed, the district court did not cite any authority for the proposition that a non-binding statement by a litigant to take certain actions that comply with the law—all the while maintaining that the litigant is under no obligation to do so—moots an active controversy, particularly as to future executions.  To the contrary, the Supreme Court's rulings on voluntary cessation announce a stringent standard that is not met here.  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' . . . The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."); *see also Bell v. City of Boise*, 709 F.3d 890, 898-99 (9th Cir. 2013) ("This heavy burden applies to a government entity that voluntarily ceases allegedly illegal conduct.").  Here, Defendants have not met that heavy burden.  For example, there would be absolutely nothing preventing the Government from simply changing its mind.

In fact, the Government's stated intentions are refuted by evidence of the Government's conduct.  Georgia law, for example, requires the presence of two physicians at an execution to determine "when death supervenes."  Ga. Code Ann. § 17-10-41.  Despite Defendants' statements that they intended to comply with the Georgia statute during the execution of Plaintiff LeCroy, two media witnesses state

49

clearly that a single man with a stethoscope entered the execution chamber, felt Mr. LeCroy's wrist and listened to his heart.  Michael Tarm, *US government executes killer obsessed with witchcraft*, AP News (Sept. 21, 2020).[7]

In response, Defendants claimed, relying on a sworn declaration that has not been subject to cross-examination, that there were in fact two doctors present, consistent with Ga. Code Ann. § 17-10-41, and that both doctors examined Mr. LeCroy to confirm death.  *See* ECF No. 301 at 4.  However, the declaration of FCI Greenville Warden Erik Williams, who was present at Mr. LeCroy's execution, does not establish that Defendants complied with the Georgia statute.  The declaration states:  "After several minutes, a physician entered the room and checked LeCroy's heartbeat with a stethoscope.  Thereafter, time of death was pronounced at approximately 9:06 p.m.  A second physician examined LeCroy and confirmed the pronouncement of death."  J.A.855.  In no way does this declaration prove that the second doctor was *present* at Mr. LeCroy's execution, as required; instead, it establishes merely that a second doctor examined Mr. LeCroy at some subsequent point after death was pronounced.  The declaration is silent as to where and when this second examination took place.  And, indeed, this is consistent with the

---

[7] Available at https://apnews.com/article/donald-trump-indiana-terre-haute-archive-executions-ad069e143126b4abb8ac65a1482cb13a (last visited Sept. 30, 2020).; George Hale (@georgehale), Twitter (Sep. 24, 2020), https://twitter.com/georgehale/status/1309010208539185154?s=20.

eyewitness accounts noted above. *Id.* Defendants' past conduct thus casts serious doubts on whether they intend to comply with the relevant state statutes absent judgment against them and an order compelling their compliance.

With respect to Texas law, the fact that Defendants have scheduled the execution of Plaintiff Hall for 6:00 p.m. does not mean that summary judgment is appropriate, or that there is no longer a material factual dispute. Again, there is nothing stopping the government, absent an order from a court, from deviating from the scheduled time. Moreover, there is a dispute about what would happen if, on the scheduled execution date, delays regarding Plaintiff Hall (or any Plaintiff sentenced in Texas) prevented the execution from occurring before midnight. Under Texas law, the execution must take place on the date that it was scheduled. Tex. Code Crim. Proc. Ann. art. 43.14(a). If that does not occur, a new date must be scheduled at least ninety-one days in the future. Tex. Code Crim. Proc. Ann. art. 43.141(c).[8]

More generally, the district court applied the wrong standard when evaluating whether Defendants were entitled to summary judgment. Although the district court must evaluate whether there is a "genuine dispute as to any material fact," and also whether the moving party is "entitled to judgment as a matter of law,"

---

[8] As Plaintiffs noted in their motion to alter or amend the district court's judgment, the executions of Daniel Lee and Wesley Purkey occurred in the early morning hours the day after their scheduled execution date. Therefore, Defendants failing to abide by Texas law is hardly a hypothetical possibility.

*see* Fed. R. Civ. P. 56, the court instead decided to focus on whether Plaintiffs are "irreparably harmed by the alleged state law violations."  J.A.134.  But that is not the summary judgment standard.  Instead, irreparable harm goes to the remedy to which Plaintiffs may be entitled.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an order:  (1) reversing the district court orders challenged herein; (2) setting aside the 2019 Protocol insofar as it violates the FDCA and APA and enjoining Defendants from continuing to act in violation of the FDCA's mandates; (3) reinstating Plaintiffs' Eighth Amendment claim; (4) reversing summary judgment against Plaintiffs' FDPA claim; and (5) remanding the case for further proceedings.

Dated:  New York, New York
          November 11, 2020

Respectfully submitted,


  /s/ Alexander C. Drylewski
Alexander C. Drylewski
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
(212) 735-3000
alexander.drylewski@skadden.com

Jonathan L. Marcus
1440 New York Avenue, N.W.

52

Washington, DC 20005
(202) 371-7000
jonathan.marcus@skadden.com

*Counsel for Plaintiff Corey Johnson*

Shawn Nolan
Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
shawn_nolan@fd.org

*Counsel for Plaintiff Jeffrey Paul*

Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
scott_braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
(202) 753 5553

*Counsel for Plaintiff James H. Roane, Jr.*


Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*


Joshua C. Toll
D.C. Bar No. 463073
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*


Ginger D. Anders (Bar No. 494471)

Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*

Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*

Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
(202) 429-1350
alentz@steptoe.com

*Counsel for Plaintiff Orlando Hall*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Plaintiff Bruce Webster*

Matthew Lawry, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
matthew_lawry@fd.org

*Counsel for Plaintiff Dustin Higgs*

Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530
(404) 688-0768 (fax)
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122

(804) 697-1240
(804) 698-5120 (fax)
steve.northup@troutmansanders.com

Frederick R. Gerson
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Plaintiff Richard Tipton, III*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 11,937 words, including headings, footnotes, and citations.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  New York, New York
             November 11, 2020

          /s/ Alexander C. Drylewski
         Alexander C. Drylewski
         Jonathan L. Marcus

         *Counsel for Plaintiff Corey Johnson*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  New York, New York
       November 11, 2020

            /s/ Alexander C. Drylewski
           Alexander C. Drylewski
           Jonathan L. Marcus

           *Counsel for Plaintiff Corey Johnson*

# STATUTORY ADDENDUM

## (Relevant Excerpts)

**Key Statutes**

5 U.S.C. § 706(2)(A)...................................................................ADD-1

18 U.S.C. § 3596(a) ...................................................................ADD-2

21 U.S.C. § 353(b)(1)..................................................................ADD-3

21 U.S.C. § 353(b)(1)(B) ............................................................ADD-3

Ga. Code Ann. § 17-10-41 ..........................................................ADD-4

Tex. Code Crim. Proc. Ann. art. 43.14(a).....................................ADD-5

Tex. Code Crim. Proc. Ann. art. 43.141(c)...................................ADD-6

UNITED STATES CODE ANNOTATED
TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES
PART I. THE AGENCIES GENERALLY
CHAPTER 7. JUDICIAL REVIEW

**5 U.S.C. § 706. Scope of Review**

\*     \*     \*     \*     \*

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\*     \*     \*     \*     \*

UNITED STATES CODE ANNOTATED
TITLE 18. CRIMES AND CRIMINAL PROCEDURE
PART II. CRIMINAL PROCEDURE
CHAPTER 228. DEATH SENTENCE

**18 U.S.C. § 3596. Implementation of a sentence of death**

\*     \*     \*     \*     \*

(a) In general.—A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed.  If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

\*     \*     \*     \*     \*

UNITED STATES CODE ANNOTATED
TITLE 21. FOOD AND DRUGS
CHAPTER 9. FEDERAL FOOD, DRUG, AND COSMETIC ACT
SUBCHAPTER V. DRUGS AND DEVICES
PART A. DRUGS AND DEVICES

**21 U.S.C. § 353. Exemptions and consideration for certain drugs, devices, and biological products**

\*       \*       \*       \*       \*

(b) Prescription by physician; exemption from labeling and prescription requirements; misbranded drugs; compliance with narcotic and marihuana laws

(1) A drug intended for use by man which—

(A) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or

(B) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug; shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist.  The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

\*       \*       \*       \*       \*

WEST'S CODE OF GEORGIA ANNOTATED
TITLE 17. CRIMINAL PROCEDURE
CHAPTER 10. SENTENCE AND PUNISHMENT
ARTICLE 2. DEATH PENALTY GENERALLY

**Ga. Code Ann., § 17-10-41.  Who shall be present at execution**

\*      \*      \*      \*      \*

There shall be present at the execution of a convicted person the superintendent of the state correctional institution or a deputy superintendent thereof, at least three executioners, two physicians to determine when death supervenes, and other correctional officers, assistants, technicians, and witnesses as determined by the commissioner of corrections.  In addition, the convicted person may request the presence of his or her counsel, a member of the clergy, and a reasonable number of relatives and friends, provided that the total number of witnesses appearing at the request of the convicted person shall be determined by the commissioner of corrections.

\*      \*      \*      \*      \*

VERNON'S TEXAS STATUTES AND CODES ANNOTATED
CODE OF CRIMINAL PROCEDURE
TITLE 1. CODE OF CRIMINAL PROCEDURE
PROCEEDINGS AFTER VERDICT
CHAPTER 43. EXECUTION OF JUDGMENT

**Tex. Code Crim. Proc. Ann. art. 43.14.  Execution of Convict: Confidential Information**

\*     \*     \*     \*     \*

 (a) Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the director of the correctional institutions division of the Texas Department of Criminal Justice.

\*     \*     \*     \*     \*

VERNON'S TEXAS STATUTES AND CODES ANNOTATED
CODE OF CRIMINAL PROCEDURE
TITLE 1. CODE OF CRIMINAL PROCEDURE
PROCEEDINGS AFTER VERDICT
CHAPTER 43. EXECUTION OF JUDGMENT

**Tex. Code Crim. Proc. Ann. art. 43.141.  Scheduling of execution date; withdrawal; modification**

\*     \*     \*     \*     \*


 (c) An execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date.

\*     \*     \*     \*     \*